Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Jennette Wiser (JW 0386)
jwiser@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLSTAR MARKETING GROUP, LLC, ONTEL PRODUCTS CORPORATION and IDEAVILLAGE PRODUCTS CORP. *Plaintiffs* <br><br> v. <br><br> AMAZON.COM, INC. *Defendant* | CIVIL ACTION No. **16-cv-9376** <br><br> **COMPLAINT** <br><br> **Jury Trial Requested** |

Allstar Marketing Group, LLC, a New York limited liability company ("Allstar"), Ideavillage Products Corp. ("Ideavillage"), a New Jersey corporation, and Ontel Products Corporation ("Ontel"), a New Jersey corporation, (collectively, "Plaintiffs") by and through their undersigned counsel, allege as follows:

## NATURE OF THE ACTION

1.    This action involves claims for direct trademark infringement of Plaintiffs' federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 et seq.; direct counterfeiting of Plaintiffs' federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c); contributory trademark

infringement and counterfeiting of Plaintiffs' federally registered trademarks in violation of the Lanham Act; false designation of origin and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); copyright infringement of Plaintiffs' federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq.; contributory and vicarious copyright infringement of Plaintiffs' federally registered copyrights in violation of the Copyright Act; and related state and common law claims (the "Action"), arising from Defendant Amazon.com, Inc.'s (hereinafter, "Amazon" or "Defendant") direct and contributory infringement and counterfeiting of Plaintiffs' Marks (as defined *infra*) and direct, contributory and vicarious infringement of Plaintiffs' Works (as defined *infra*), including without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying offering for sale and/or selling unlicensed, infringing and/or counterfeit versions of Plaintiffs' ASOTV Products (as defined *infra*).

## JURISDICTION AND VENUE

2.      This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 et seq. and the Copyright Act, 17 U.S.C. §§ 101 et seq.; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition; and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

3.      Personal jurisdiction exists over Defendant in this judicial district pursuant to N.Y.C.P.L.R. §§ 302(a)(1) and (3), because Defendant regularly conducts, transacts and/or solicits business in New York and in this judicial district, and/or derives substantial revenue from its business transactions in New York and in this judicial district, and/or otherwise avails itself of the privileges and protections of the laws of the State of New York, and Defendant's unlawful conduct complained of herein has caused and continues to cause injury to Plaintiffs in New York and within this judicial district such that this Court's assertion of jurisdiction over Defendant does not offend traditional notions of fair play and due process.

4.      Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because Defendant conducts, transacts and/or solicits business in this judicial district and, upon information and belief, a substantial part of the events or omissions giving rise to Plaintiffs' claims, specifically the infringement of Plaintiffs' intellectual property, has occurred, and is continuing to occur in this judicial district, and has caused damage to Plaintiffs in this judicial district.

## THE PARTIES

5.      Plaintiff Allstar is a New York limited liability company, having its principal place of business at 2 Skyline Drive, Hawthorne, NY 10532.

6.      Plaintiff Ontel is a New Jersey corporation, having its principal place of business at 21 Law Drive, Fairfield, NJ 07004.

7.      Plaintiff Ideavillage is a New Jersey corporation, having its principal place of business at 155 Route 46 West, Wayne, NJ 07470.

8.      Defendant Amazon is a Delaware corporation, having its principal place of business at 410 Terry Avenue North, Seattle, WA 98109.

**GENERAL ALLEGATIONS**
**Plaintiffs and Their Well-Known Consumer Products**

9.      Plaintiffs are leading developers, producers, marketers, and distributors of quality, innovative consumer products, which Plaintiffs initially promote and sell through national direct response television advertising commonly called "As Seen On TV" ("ASOTV Products").  A comprehensive list of Plaintiffs' ASOTV Products and the corresponding U.S. trademark registrations and U.S. copyright registrations are identified in the charts attached hereto as **Exhibits A & B**, respectively, and incorporated by reference.

10.      Plaintiffs also promote and sell their ASOTV Products at the retail level at well-known mass retail outlets, including, for example: Wal-Mart, Target, Bed Bath & Beyond, Toys R Us, Rite-Aid, CVS and Walgreens; through catalog companies; online, through their own websites and their retail customers' websites; as well as through a network of international distributors, among other channels of trade.

11.      More specifically, Plaintiffs promote and sell their ASOTV Products through their corporate websites: https://www.allstarmg.com, https://www.ontelproducts.com, and https://www.ideavillage.com ("Corporate Websites") and individual product websites specifically designed and developed by Plaintiffs to sell each of their ASOTV Products, using and/or featuring Plaintiffs' direct response advertising and through which consumers can purchase the ASOTV Product advertised directly from Plaintiffs, such as: www.mysnuggiestore.com; https://www.magicmesh.com; https://www.simplyfitboard.com; https://www.magictracks.com; https://www.5secondfix.com; https://www.buysimplystraight.com; https://www.getcopperfit.com/; https://www.finishingtouchyes.com/; and https://www.toughblade.com, among many others ("Example ASOTV Product Websites").  The Corporate Websites and the Example ASOTV

Product Websites are collectively referred to as, "Plaintiffs' Websites".  Screenshots from a representative sample of Plaintiffs' Websites are attached hereto as **Exhibit C** and incorporated herein by reference.

12.      Plaintiffs are among the most well-known, well-respected sources of many of the most popular and most successful ASOTV Products sold in the United States.

13.      Some of Plaintiffs' most recent successful ASOTV Products include: Allstar's Snuggie, Simply Fit Board (under exclusive license) and Magic Mesh products, which are marketed and sold under the respective distinctive trademarks ("Example Allstar Products"); Ontel's Magic Tracks, 5 Second Fix, and Simply Straight products which are marketed and sold under the respective distinctive trademarks ("Example Ontel Products"); and Ideavillage's Copper Fit, Finishing Touch and MicroTouch products which are marketed and sold under the respective distinctive trademarks ("Example Ideavillage Products").   Collectively, Example Allstar Products, Example Ontel Products and Example Ideavillage Products are referred to as, ("Example ASOTV Products").

14.      While Plaintiffs have gained significant common law trademark and other rights in their trademarks for their ASOTV Products, including, without limitation, the Example ASOTV Products, through use, advertising and promotion, Plaintiffs have also protected their valuable rights by filing for and obtaining federal trademark registrations.

15.      Plaintiffs are owners or exclusive licensees of the relevant U.S. trademark registrations and/or applications identified in the charts attached hereto as **Exhibit A** and incorporated herein by reference (collectively, "Plaintiffs' Marks").

16.     Plaintiffs' Marks are currently in use in commerce and were first used in commerce on or before the dates of first use reflected in the respective registrations and/or applications, which are identified in the charts attached hereto as **Exhibit A**.

17.     In addition, Plaintiffs also own or exclusively license both registered and unregistered copyrights, including the relevant U.S. copyright registrations identified in the charts attached hereto as **Exhibit B** and incorporated herein by reference, in and related to the packaging, instructions and other marketing materials and/or artwork for their ASOTV Products (collectively, "Plaintiffs' Works").

18.     Plaintiffs have spent substantial time, money and effort in building up and developing consumer recognition, awareness and goodwill in Plaintiffs' ASOTV Products, Plaintiffs' Marks and Plaintiffs' Works.

19.     The success of Plaintiffs' ASOTV Products is due in part to Plaintiffs' marketing and promotional efforts.  These efforts include advertising and promotion through television, Plaintiffs' Websites, retailer websites and other internet-based advertising, print, participation in trade shows, among other efforts, both domestically and abroad.

20.     Plaintiffs' success is also due to their use of the highest quality materials, processes and facilities in manufacturing their ASOTV Products.

21.     In addition, Plaintiffs owe a substantial amount of the success of their ASOTV Products to their third-party inventors, consumers and the word-of-mouth buzz that such inventors and consumers have generated.

22.     Plaintiffs' marketing and promotional efforts, the quality of Plaintiffs' ASOTV Products and the word-of-mouth buzz generated by their inventors and consumers, have made Plaintiffs' ASOTV Products and Plaintiffs' Marks prominently placed in the minds of the public.

Retailers, retail buyers, consumers, and members of the public have become familiar with Plaintiffs' ASOTV Products, and associate them exclusively with Plaintiffs.

23.     Plaintiffs and Plaintiffs' Marks have acquired a valuable reputation and goodwill among the public as a result of such associations (*i.e.*, acquired distinctiveness or secondary meaning).

24.     Plaintiffs have gone to great lengths to protect their interests in and to Plaintiffs' ASOTV Products, Plaintiffs' Marks and Plaintiffs' Works.

**Amazon and its State of the Art Identification and Tracking Capabilities and FBA Services**

25.     Amazon is a global electronic commerce (e-commerce) and cloud computing company and is the world's largest internet-based retailer by total sales and market capitalization, with revenues of $107.01 billion in 2015, up 20.2% from $88.99 billion in 2014.[1]

26.     Amazon's stock has climbed 37% over the last twelve (12) months—making it the world's fourth-most valuable company.[2]

27.     Amazon itself develops, advertises, distributes, offers for sale, sells and ships a number of private-label brands of products (*e.g.*, Amazon Basics, Amazon Kindle, Amazon Echo, Amazon Fire) ("Private-Label Products"), and also sources and purchases a wide range of products from manufacturers, wholesalers and brand owners ("1P Sellers") pursuant to vendor central agreements ("1P Products" and "VCAs", respectively), and imports, exports, advertises, distributes, offers for sale, sells and ships such 1P Products directly to consumers through the Amazon website, at www.amazon.com ("Amazon Website").  Both Private-Label Products and 1P Products are designated as, "Ships from and sold by Amazon.com" in the product listings on

---

[1] Allison Enright, *Amazon sales climb 22% in Q4 and 20% in 2015*, INTERNET RETAILER (2016), https://www.internetretailer.com/2016/01/28/amazon-sales-climb-22-q4-and-20-2015 (last visited Dec 2, 2016).
[2] Ari Levy, *How Amazon Counterfeits Put This Man's Business on Brink of Collapse*, CNBC (2016), http://www.cnbc.com/2016/10/24/how-amazon-counterfeits-put-this-mans-business-on-brink-of-collapse.html   (last visited Dec. 2, 2016).

the Amazon Website.   The following is a screenshot of an example listing taken from the Amazon Website for an ASOTV Product that is designated as, "Ships from and sold by Amazon.com":



28.     In addition to Amazon's sale of Private-Label Products and 1P Products through the Amazon Website, Amazon also offers a marketplace platform for over two million (2,000,000) manufacturers, wholesalers and retailers, as well as other third-party sellers worldwide to import, export, advertise, distribute, offer for sale, sell and ship their wholesale and retail products ("3P Seller(s)" and "3P Product(s)", respectively) to consumers, which accounts for over 40% of the total units sold on the Amazon Website.[3]

29.     3P Sellers list each of their 3P Products, and Amazon itself lists each of its Private Label Products and 1P Products, on or in connection with a product detail page ("PDP").   A PDP is the page where customers read details about a product offered for sale on the Amazon Website.   The PDP includes a product image, price, description, customer reviews, ordering options, and the link to view offers from all sellers of the product.   Once a PDP is created, it becomes part of the Amazon catalog, available at any point in the future to buyers and other sellers.   Screenshots of a representative sample of the PDPs for the Example ASOTV Products

---

[3]Sarah Perez, *Amazon's Third-Party Sellers Ship Record-Breaking 2 Billion Items In 2014, But Merchant Numbers Stay Flat*, TECH CRUNCH (2015), https://techcrunch.com/2015/01/05/amazon-third-party-sellers-2014/ (last visited Dec. 2, 2016).

are attached hereto as **Exhibit D** and incorporated herein by reference; *see* a printout of Amazon's Creating a Product Detail Page help page from the Amazon Website, attached hereto as **Exhibit E** and incorporated herein by reference.

30.     PDPs also include the particular product's Amazon Standard Identification Number (or ASIN), which is a unique ten (10) character alphanumeric product identifier that is assigned by Amazon and is used to reference Amazon catalog data, track inventory for products, and index catalog pages for searching and browsing on the Amazon Website.  For books, the ASIN is the same as the ISBN number, but for all other products a new ASIN is created when the item is uploaded to the Amazon catalog.  Printouts of Amazon's Page Ownership, ASIN Creation Policy and Locating Product Identifiers help pages from the Amazon Website are attached hereto as **Exhibit F** and incorporated herein by reference.

31.     While the ASIN is one form of product identification, the creation of an accurate PDP requires product identifiers in addition to the ASIN designated by Amazon.  Amazon also requires the identification of industry-standard product identifiers, commonly called GTINs, or Global Trade Item Numbers (i.e., Universal Product Codes (UPCs), International Standard Book Numbers (ISBNs), European Article Numbers (EANs), and Japanese Article Number (JAN)) (*see* **Exhibit F**).

32.     A feature of the Amazon Website is that multiple sellers, including Amazon, 1P Sellers and 3P Sellers, can offer products for sale under the same PDP.  If more than one seller lists a product for sale under a particular PDP, the sellers may compete for the "Buy Box" for that product.  The Buy Box refers to the box on the PDP where customers add items to their shopping cart.  The seller with the highest performance metrics and most experience usually "wins" the Buy Box, meaning that the seller is the default seller of the product.  A printout of

Amazon's How the Buy Box Works help page from the Amazon Website is attached hereto as **Exhibit G** and incorporated herein by reference.

33.     In addition, Amazon offers 3P Sellers, in over 100 countries, its "Fulfillment by Amazon" (FBA) service, which it touts as one of the most advanced fulfillment networks in the world, and includes services such as: allowing 3P Sellers to store 3P Products in Amazon's fulfillment centers ("Fulfillment Center(s)"); and picking, packing, shipping, and customer services for such 3P Products by Amazon.  The 3P Products that are distributed through FBA are designated as "Sold by [name of respective FBA Seller or brand name] and Fulfilled by Amazon" in the product listings on the Amazon Website.  3P Sellers using the FBA service are herein after referred to as "FBA Sellers".  Printouts from the Amazon Website describing the FBA program and its features and services are attached hereto as **Exhibit H** and incorporated herein by reference.  The following is a screenshot of an example listing taken from the Amazon Website for an ASOTV Product that is "Sold by [name of respective FBA Seller or brand name] and Fulfilled by Amazon":



34.     Upon information and belief, as of September 2016, Amazon owns and operates roughly 70 Fulfillment Centers in 21 states, including a 40,000 square-foot Fulfillment Center in New York City[4] and about 44% of the U.S. populace is within 20 miles of a Fulfillment Center.[5]

35.     FBA Sellers must choose to either have Amazon identify and track their 3P Products using a GTIN ("Manufacturer Barcode(s)") or an Amazon barcode (*i.e.*, an FNSKU and MSKU) ("Amazon Barcode(s)").  A printout of Amazon's FBA Product Barcode Requirements help page from the Amazon Website is attached hereto as **Exhibit I** and incorporated herein by reference.

36.     By default, every FBA Seller account is set to use the Manufacturer Barcode(s) to track 3P Products through FBA.  A printout of Amazon's Use the Manufacturer Barcode to Track Inventory help page from the Amazon Website is attached hereto as **Exhibit J** and incorporated herein by reference.

37.     When the Manufacturer Barcode(s) are used to track 3P Products through FBA, those 3P Products are automatically commingled with inventory of the same products from other sellers at the Fulfillment Centers, including Private Label Products and 1P Products from Amazon itself, and other FBA Sellers who also use Manufacturer Barcodes for those items ("Commingled Inventory").[6]  A printout of Amazon's Stickerless, Commingled Inventory help

---

[4]Lisa Eadicicco and Josh Raab, *Look Inside Amazon's New York City Warehouse*, TIME (2015), http://time.com/4159225/amazon-warehouse-gifs/ (last visited Dec. 2, 2016); Jillian D'Onfro, *Here are All of Amazon's Warehouses in the US*, BUSINESS INSIDER (2015), http://www.businessinsider.com/how-many-fulfillment-centers-does-amazon-have-in-the-us-2015-3 (last visited Dec. 2, 2016).
[5]Greg Bensinger and Laura Stevens, *Amazon's Newest Ambition: Competing Directly with UPS and FedEx*, THE WALL STREET JOURNAL (2016), http://www.wsj.com/articles/amazons-newest-ambitioncompeting-directly-with-ups-and-fedex-1474994758 (last visited Dec. 2, 2016).
[6]Mary Weinstein, *The Pros and Cons of Commingling for Amazon Merchants*, INTERNET RETAILER (2014), https://www.internetretailer.com/commentary/2014/07/01/pros-and-cons-commingling-amazon-merchants (last visited Dec. 2, 2016); Serena NG and Greg Bensinger, *Do You Know What's Going in Your Amazon Shopping Cart?*, THE WALL STREET JOURNAL (2014), http://www.wsj.com/articles/on-amazon-pooled-merchandise-opens-door-to-knockoffs-1399852852 (last visited Dec. 2, 2016).

page from the Amazon Website is attached hereto as **Exhibit K** and incorporated herein by reference; *see also* **Exhibit I**.

38.     While Commingled Inventory is labeled with the same Manufacturer Barcode and pooled together for purposes of FBA, Amazon is able to identify the original seller, source and owner of the products (*see* **Exhibit I**).

39.     Amazon Barcodes are required to be used for all products that are not tracked using Manufacturer Barcodes, products that are expiration-dated, as well as consumable and topical products such as skin creams, shampoos, and cosmetics.  If a FBA Seller chooses to label its 3P Product(s) using the Amazon Barcode, it must print and label each of its 3P Products with the Amazon Barcode.  A printout of Amazon's Use an Amazon Barcode to Track Inventory help page from the Amazon Website is attached hereto as **Exhibit L** and incorporated herein by reference.

40.     Amazon also offers its FBA Label Service for 3P Products requiring Amazon Barcodes only, through which FBA Sellers can elect to have Amazon print and apply the Amazon Barcodes upon arrival at the Fulfilment Centers for a per-item fee.   A printout of Amazon's FBA Label Service help page from the Amazon Website is attached hereto as **Exhibit M** and incorporated herein by reference.

41.     FBA Sellers are required to follow certain prep, packaging and labeling requirements when shipping their 3P Products to Fulfilment Centers for distribution.  A printout of Amazon's How Amazon Receives and Stores Your Inventory help page from the Amazon Website is attached hereto as **Exhibit N** and incorporated herein by reference.

42.     FBA Sellers may elect to use the FBA Prep Service for certain products, where Amazon prepares the packaging of each 3P Product before distribution to consumers for a per-

unit fee.  A printout of Amazon's FBA Prep Services help page from the Amazon Website is attached hereto as **Exhibit O** and incorporated herein by reference.

43.     When a FBA Seller is ready to send its inventory of 3P Products to Fulfillment Centers, the FBA Seller creates a shipping plan via its seller account on the Amazon Website.  A printout of Amazon's Shipping Products to Amazon help page from the Amazon Website is attached hereto as **Exhibit P** and incorporated herein by reference.

44.     Each inventory shipment created by a FBA Seller will be assigned to a specific Fulfillment Center by Amazon.  Amazon may, at its own discretion, split the FBA Seller's inventory into multiple shipments destined for multiple different Fulfilment Centers.  Even once the FBA Seller's inventory is in one Fulfillment Center, Amazon may unilaterally choose to transfer part or the entire inventory to another Fulfilment Center (*see* **Exhibit P**).

45.     Within three (3) business days of being received at a Fulfillment Center, the FBA Seller's inventory is generally scanned and made available for sale ("Receiving Process").[7]

46.     During the Receiving Process, the Manufacturer Barcode or Amazon Barcode for each 3P Product in the FBA Seller's inventory is individually scanned and entered into the FBA tracking system, and the dimensions and weight of each 3P Product is captured for storage and fulfillment purposes (*see* **Exhibit N**).

47.     When a shipment arrives at a Fulfillment Center, an Amazon associate scans the shipping label to confirm that shipment is in the FBA tracking system and is at the correct Fulfillment Center.  Next, an Amazon associate opens each and every shipment and verifies that each of the individual units contained within a shipment have a single, scannable barcode (i.e., either the Manufacturer Barcode or the Amazon Barcode).  An Amazon associate then evaluates

---

[7]*See* FulfillmentbyAmazon, *How Amazon Receive Your Inventory*, YOUTUBE (Dec. 23, 2013), https://www.youtube.com/watch?v=dAXdeqcHBp4&feature=youtu.be (A true and complete copy of the transcript for the video found at this link is attached hereto as **Exhibit Q** and incorporated by reference).

each product to determine if it needs additional prep to ensure that the items are not damaged during the outbound shipment to the final consumers.  Afterward, an Amazon associate performs a "six-sided check" of each product.  Finally, before packing each item for delivery to the consumer, an Amazon associate will perform a title verification to confirm that the title and the product are the same.  An individual product is considered received once these steps have been performed.[8]

48.     Amazon also offers Multi-Channel FBA, which is a service that enables FBA Sellers to fulfill orders from sales channels other than the Amazon Website (such as FBA Sellers' own independent websites or other e-commerce platforms) using the inventory that is stored in the Fulfillment Centers.  Printouts of Amazon's Multi-Channel Fulfillment help and services pages from the Amazon Website are attached hereto as **Exhibit R** and incorporated herein by reference.

49.     Additionally, Amazon's FBA Export Program enables FBA Sellers to sell eligible 3P Products to consumers in more than sixty (60) countries using FBA.  Printouts of Amazon's FBA Export help pages from the Amazon Website are attached hereto as **Exhibit S** and incorporated herein by reference.

50.     Starting in October 2014, Amazon began allowing direct importation and drop shipping from Chinese factories and wholesalers, which previously had to count on middlemen, brands and private labels, to facilitate FBA Sellers' delivery of 3P Products to Fulfillment Centers and to extend the reach of 3P Sellers to global consumers through the Amazon Website.[9]

---

[8] *See supra,* fn. 7.
[9] Ari Levy, *Amazon's Chinese Counterfeit Problem is Getting Worse,* CNBC (2016), http://www.cnbc.com/2016/07/08/amazons-chinese-counterfeit-problem-is-getting-worse.html (last visited Dec. 2, 2016); Dave Palmer, *Amazon Made it Easier for Chinese Counterfeiters to Sell you Fake Products*, YAHOO! TECH (2016), https://www.yahoo.com/tech/amazon-chinese-counterfeit-problem-escalates-145117926.html (last visited Dec. 2, 2016); Kenneth Rapoza, *How China and Amazon are Changing the Future of Retail,* FORBES (2016) http://www.forbes.com/sites/kenrapoza/2016/07/08/how-china-and-amazon-are-changing-the-future-of-

A printout of Amazon's Drop Shipping Policy help page from the Amazon Website is attached hereto as **Exhibit T** and incorporated herein by reference.

51.     Moreover, even with the knowledge that China is notorious for the wide-spread sale of counterfeit and/or infringing products, in January 2016, Amazon's Chinese subsidiary, Beijing Century Joyo Courier Service Co Ltd, with the trade names Amazon China, Amazon.CN and Amazon Global Logistics China, registered as an ocean freight forwarder with the U.S. Federal Maritime Commission, a move that will give Amazon even more control over shipping products from Chinese factories directly to U.S. Fulfillment Centers and U.S. consumers.[10]

52.     The aforementioned programs and requirements are part of Amazon's sophisticated product inventory tracking and management systems, which, coupled with Amazon's rigorous FBA policies (*see* **Exhibit H**), are designed to enable Amazon to identify products and FBA Sellers and 3P Sellers with specificity and control and monitor the FBA Sellers' listings[11] and the inventory running through the Fulfillment Centers.

### ASOTV Products on the Amazon Website

53.     Collectively, there are hundreds of thousands of listings for 1P Products and 3P Products using Plaintiffs' Marks and/or Plaintiffs' Works on the Amazon Website.

54.     For example, as of November 30, 2016, a search for Allstar's Snuggie returns 7,464 listings, a search for Ontel's Magic Tracks returns 551 listings, and a search for Ideavillage's Finishing Touch returns 148,030 listings.  Attached as **Exhibit U**, and incorporated

---

retail/#49eada0970bd (last visited Dec. 2, 2016);  Frank Tong, *How a Chinese Startup Became a Top Seller on Amazon.com*, INTERNET RETAILER (2015), https://www.internetretailer.com/2015/10/02/how-chinese-startup-became-top-seller-amazoncom (last visited Dec. 2, 2016).
[10]Mari Saito, *Amazon Expands Logistics Reach with Move into Ocean Shipping,* REUTERS (2016), http://www.reuters.com/article/us-amazon-com-freight-idUSKCN0US2YW (last visited Dec. 2, 2016); *see also supra,* fn. 9.
[11]*See* a printout of Amazon's Creating a Listing help page from the Amazon Website indicating that Amazon places certain restrictions on editing a listing is attached hereto as **Exhibit V** and incorporated herein by reference.

by reference, is a true and correct copy of the search results printed out from the Amazon Website.

55.     Amazon has VCAs with Allstar to sell the following brands of ASOTV Products as 1P Products on the Amazon Website: Bacon Boss, Clever Cutter, Dr. Hart's Power Floss, Egg-Tastic, Hot Designs, Hot Stampz, Kitty Shack, Knot Out Dog Brush, Orbitrim, Press 2 Paste, Purrfect Arch, Purse Pouch, Roto Clipper, Secret Color, Secret Extensions, Simple Step, Simply Fit, Snuggie Tails, Table Mate, True Touch and Wobble Wag Giggle.

56.     Amazon has VCAs with Ontel to sell the following brands of ASOTV Products as 1P Products on the Amazon Website: Bowl Light, Everbrite, Gopher, Hot Hands, Iron Gym, Magic Tracks, Miracle Aloes, Miracle Grill Mat, Miracle Socks, Pink Armor, Potato Express, Seat Solution, Simply Straight, Sleep Easy, Speed Out, Side Sleeper PRO, Strutz, Veggetti, and 5 Second Fix, among others.

57.     Amazon has VCAs with Ideavillage to sell the following brands of ASOTV Products as 1P Products on the Amazon Website: Copper Fit, Finishing Touch, MicroTouch, Hamper Hoops, Magic Pens, Rocket Copters, Swerve Ball, Go Belt, Miss Belt, Naked Nails, Hover Hockey, Hover Ball and Airbrush Magic.

58.     The ASOTV Products sold as 1P Products on the Amazon Website, including but not limited to those products identified in Paragraphs 55-57 herein, are collectively hereinafter referred to as "ASOTV 1P Products".

59.     Under its VCAs with Plaintiffs (collectively, "Plaintiffs' VCA(s)"), Allstar has sold approximately 240,000 units of ASOTV 1P Products, Ontel has sold approximately 196,000 units of ASOTV 1P Products, and Ideavillage has sold approximately 350,000 units of ASOTV 1P Products to Amazon for resale or distribution on the Amazon Website and Amazon itself has

16

offered for sale and sold hundreds of thousands of ASOTV 1P Products on the Amazon Website. Thus, Amazon has actual knowledge of Plaintiffs' use of and rights in and to Plaintiffs' Marks and/or Plaintiffs' Works pertaining to, at the very least, the ASOTV 1P Products.

60.    Upon information and belief, Amazon also has VCAs with other 1P Sellers to purchase and sell 1P Products, including, upon information and belief, ASOTV 1P Products.[12]

61.    In addition, there are numerous 3P Sellers and FBA Sellers importing, exporting, advertising, distributing, offering for sale, selling and shipping 3P Products, including Plaintiffs' ASOTV Products and 3P Products using Plaintiffs' Marks and/or Plaintiffs' Works through the Amazon Website.

### Amazon's Wrongful and Infringing Conduct

62.    As repeatedly addressed in press coverage throughout 2016[13], and as reflected in the federal lawsuits filed against Amazon[14] and/or its 1P Sellers[15], as well as lawsuits filed by Amazon itself against 3P Sellers[16], an astronomical number of counterfeit and infringing products are offered for sale and sold on the Amazon Website at a rampant rate.

---

[12] *See Daimler AG v. Amazon.com, Inc.*, Case No. 2:16-cv-00518-JCC, Dkt. 1 (Apr. 11, 2016); *Apple Inc. v. Mobile Star LLC*, Case No. 3:16-cv-06001-WHO, Dkt. 1 (Oct. 17, 2016).

[13] *See e.g.*, Serena NG and Greg Bensinger, *Do You Know What's Going in Your Amazon Shopping Cart?*, THE WALL STREET JOURNAL (2014), http://www.wsj.com/articles/on-amazon-pooled-merchandise-opens-door-to-knockoffs-1399852852 (last visited Dec. 2, 2016); Ari Levy, *Amazon's Chinese Counterfeit Problem is Getting Worse,* CNBC (2016), http://www.cnbc.com/2016/07/08/amazons-chinese-counterfeit-problem-is-getting-worse.html (last visited Dec. 2, 2016); Ari Levy, *Amazon Counterfeiters Wreak Havoc on Artists and Small Businesses*, CNBC (2016), http://www.cnbc.com/2016/05/25/amazon-counterfeiters-wreak-havoc-on-artists-and-small-businesses.html (last visited Dec. 2, 2016); Eugene Kim, *Hundreds of Frustrated Sellers Grilled an Amazon Exec Over Chinese Counterfeit Products*, BUSINESS INSIDER (2016); http://www.businessinsider.com/amazon-chinese-counterfeit-problem-2016-7 (last visited Dec. 2, 2016); Ari Levy, *How Amazon Counterfeits Put This Man's Business on Brink of Collapse,* CNBC (2016), http://www.cnbc.com/2016/10/24/how-amazon-counterfeits-put-this-mans-business-on-brink-of-collapse.html (last visited Dec. 2, 2016).

[14] Todd Bishop, *Daimler AG Sues Amazon Over Replica Mercedes Wheels, in New Test of Liability for Knockoff Goods*, GEEKWIRE (2016), http://www.geekwire.com/2016/daimler-ag-sues-amazon-knockoff-mercedes-wheels-new-test-e-commerce-giants-liability-counterfeit-goods/ (last visited Dec. 2, 2016).

[15] Amit Chowdhry, *Apple: Nearly 90% Of 'Genuine' iPhone Chargers On Amazon Are Counterfeit*, FORBES (2016), http://www.forbes.com/sites/amitchowdhry/2016/10/23/apple-nearly-90-of-genuine-iphone-chargers-on-amazon-are-fake/#cdf56ea23f6a (last visited Dec. 2, 2016).

[16] Lena Rao, *Amazon Sues Merchants Over Selling Counterfeit Items*, FORTUNE (2016), http://fortune.com/2016/11/14/amazon-counterfeit-items-lawsuit/ (last visited Dec. 2, 2016).

63.    As a result of the excessive counterfeiting and infringing activities occurring on the Amazon Website, brand owners such as: NFL, Wüsthof, Johnson & Johnson, Estée Lauder and Birkenstock, among several others, have completely banned the sale of their products on the Amazon Website.[17]

64.    In light of Plaintiffs' success with its popular ASOTV Products, Plaintiffs and their ASOTV Products have become targets for unscrupulous individuals and entities who wish to take a free ride on the goodwill, reputation and fame Plaintiffs have amassed in Plaintiffs' ASOTV Products, Plaintiffs' Marks and the works embodied in Plaintiffs' Works.

65.    Since at least as early as 2014, through Plaintiffs' ongoing investigations into infringing and counterfeiting activities, Plaintiffs learned of infringing and counterfeiting activities occurring on the Amazon Website, which vary and include, but are not limited to: importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling products bearing or used in connection with one or more of Plaintiffs' Marks and/or Plaintiffs' Works, and/or products in packaging and/or containing labels and/or hang tags bearing Plaintiffs' Marks and/or Plaintiffs' Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to Plaintiffs' Marks and/or Plaintiffs' Works, and/or products that are identical or confusingly or substantially similar to the ASOTV Products (collectively referred to as, "Infringing Product(s)" or "Counterfeit

---

[17]Ina Steiner, *can the NFL Ban on Marketplace Sales Succeed?*, ECOMMERCE BYTES (2016), http://www.ecommercebytes.com/cab/abn/y16/m04/i12/s01 (last visited Dec. 2, 2016); Jack Ellis, *Birkenstock Leaves Amazon "to Counterfeiters, Fake Suppliers and Unauthorized Sellers" as IP Concern Mounts*, WORLD TRADEMARK REVIEW (2016), http://www.worldtrademarkreview.com/blog/detail.aspx?g=df3a393b-6bbe-45bd-8032-0668f7c9ca20 (last visited Dec. 2, 2016); Ari Levy, *Birkenstock Quits Amazon in US After Counterfeit Surge*, CNBC (2016), http://www.cnbc.com/2016/07/20/birkenstock-quits-amazon-in-us-after-counterfeit-surge.html (last visited Dec. 2, 2016); Serena NG and Greg Bensinger, *Do You Know What's Going in Your Amazon Shopping Cart?*, THE WALL STREET JOURNAL (2014), http://www.wsj.com/articles/on-amazon-pooled-merchandise-opens-door-to-knockoffs-1399852852 (last visited Dec. 2, 2016).

Product(s)") to U.S. consumers (including those located in the state of New York) by Amazon itself as well as by numerous FBA Sellers and other 3P Sellers on the Amazon Website.

66.     For example, Amazon and/or one of its Fulfillment Centers is often identified as the importer of record for shipments of 3P Products destined for Fulfilment Centers imported from outside of the U.S.  As a result of seizure notices identifying Amazon as the importer of record issued by U.S. Customs and Border Protection ("CBP") to Amazon and Plaintiffs pursuant to 19 C.F.R. § 133.21(b)(2)(i) and 19 C.F.R. § 151.16(c), Amazon has been notified of Infringing Products seized by CBP after CBP determined such products were in fact counterfeit and/or infringing ("Seizure Notices").  Attached hereto as **Exhibit W** is a representative sample of the Seizure Notices identifying Amazon or an Amazon Fulfillment Center as the importer of record of Infringing Products.

67.     Throughout Plaintiffs' investigation, Plaintiffs have purchased numerous Counterfeit Products offered for sale and sold by numerous FBA Sellers and other 3P Sellers on the Amazon Website.   The Counterfeit Products were shipped to Plaintiffs or their representatives both from Fulfillment Centers located throughout the World, including, most notably, the United States and China, and also drop-shipped directly from 3P Sellers located in China, Japan, Thailand and other foreign countries.[18]   Attached hereto as **Exhibit X** and incorporated herein by reference are example listings, invoices and/or photographs evidencing listings for Counterfeit Products "Sold by [name of respective FBA Seller or brand name] and Fulfilled by Amazon" and attached hereto as **Exhibit Y** and incorporated herein by reference are example listings, invoices and/or photographs evidencing listings for Counterfeit Products "Shipped and sold by [name of respective 3P Seller or brand name]" and drop-shipped

---

[18]Noah Herschman, *The Taobao Seller's Journey onto the Amazon Platform*, LINKIEDIN (2016), https://www.linkedin.com/pulse/taobao-sellers-journey-onto-amazon-platform-noah-herschman (last visited Dec. 2, 2016).

from China, Japan, Thailand and/or any other country prohibited from distributing ASOTV Products directly to U.S. customers.

68.     Despite Amazon's "Anti-Counterfeiting Policy", which states in relevant part: "Customers trust that they can always buy with confidence on Amazon.com. Products offered for sale on Amazon.com must be authentic. The sale of counterfeit products, including any products that have been illegally replicated, reproduced, or manufactured, is strictly prohibited…", and Amazon's infringement reporting form and procedures, inviting rights holders to report counterfeits and/or infringements found on the Amazon Website, which Amazon will consider on a case-by-case basis, and may remove the counterfeit and/or infringing product, or a specific listing therefore, from the Amazon Website ("Amazon Reporting System"), a growing number of counterfeit and/or infringing products are still being imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold by Amazon and/or otherwise through the Amazon Website and/or using FBA. Printouts of Amazon's Anti-Counterfeiting Policy help page from the Amazon Website and its online Report Infringement form are attached hereto as **Exhibit Z** and incorporated herein by reference.

69.     In fact, as of the date of this Complaint, Plaintiffs have collectively submitted thousands of listings for Counterfeit Products being imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold through the Amazon Website and/or using FBA to Amazon using the Amazon Reporting System.  For instance, Allstar has reported approximately 2,114 since July 2016.  *See* **Exhibits X & Y** including a representative sample of e-mail confirmations and correspondence regarding the infringement reports submitted for relevant listings for Counterfeit Products.

70.     Likewise, Plaintiffs have repeatedly informed their respective Amazon Vendor Managers (which were assigned to Plaintiffs by Amazon pursuant to the VCAs) and have also, in some cases, been informed by their respective Amazon Vendor Managers: (1) that certain Counterfeit Products were being offered for sale through PDPs associated with Plaintiffs' ASOTV Products at impossibly low prices, in other words, that the PDPs were "hijacked", and in some cases the 3P Sellers selling the Counterfeit Products "won" the PDP's "Buy Box", thereby becoming the default sellers (*see supra* ¶¶ 30-33; *see also infra* ¶¶ 72-74) (*see* **Exhibits AA and BB)**; (2) that Plaintiffs do not permit any drop-shipping of Plaintiffs' ASOTV Products from outside the United States (*see* **Exhibits CC – FF)**; and (3) that bad reviews for Counterfeit Products on Hijacked PDPs (as defined *infra*) were eroding the price of authentic ASOTV Products and harming their ability to sell the same, as well as damaging their reputations (*see* **Exhibits GG – II)**.

71.     PDPs have become vulnerable to "hijackers", which have listed and/or are listing unauthorized or counterfeit versions of the associated product at a lower price ("Hijacked PDP" and "PDP Hijacker", respectively).[19]  To consumers, the product appears authentic because it is being listed under the same PDP as authentic versions of the product.  A consumer is naturally going to favor the cheaper product when deciding to purchase and is even more likely to purchase from the PDP Hijacker, if he or she has won the Buy Box and is the default seller.

72.     Moreover, purchasers of the unauthorized or counterfeit versions of the product will often leave bad reviews on the Hijacked PDP, thereby driving down sales of the authentic

---

[19]Ari Levy, *Amazon's Chinese Counterfeit Problem is Getting Worse,* CNBC (2016), http://www.cnbc.com/2016/07/08/amazons-chinese-counterfeit-problem-is-getting-worse.html (last visited Dec. 2, 2016).

versions of the product even further, as well as affecting the performance standards for those sellers listing authentic versions of the product under the Hijacked PDP.[20]

73.    Plaintiffs have repeatedly notified Amazon, through its Vendor Managers, of Hijacked PDPs, and Amazon itself, often through its Vendor Managers, will send an automated alert to Plaintiffs when they are losing the Buy Box.   Attached hereto as **Exhibit AA** is a representative sample of communications between Plaintiffs and Amazon Vendor Managers concerning Hijacked PDPs and as **Exhibit BB** are examples of automated alerts from Amazon, or its Vendor Managers, notifying Plaintiffs of lost Buy Boxes; *see also* **Exhibit FF**.

74.    Amazon has, either itself (*see* **Exhibit W**) and/or allowed FBA Sellers and 3P Sellers to sell and drop-ship Infringing Products to Fulfillment Centers and directly to U.S. customers.

75.    For example, on December 1, 2016, Allstar identified a 3P Seller offering for sale a Counterfeit Product (a counterfeit True Touch product) on the Amazon Website, being drop-shipped directly from China with an estimated delivery date of "December 29, 2016 – January 20, 2016", with a price of less than half of Allstar's suggested retail price of $14.99.   Attached as **Exhibit CC** is a screenshot of the listing for the relevant Counterfeit Product.

76.    As another example, on October 21, 2016, Ontel identified a 3P Seller offering for sale a Counterfeit Product (a counterfeit EverBrite product) identified as a "#1 Best Seller" on the Amazon Website, being drop-shipped directly from China with an estimated delivery date of "November 17 – December 6", with a price of more than three dollars ($3.00) less than Ontel's suggested retail price of $12.99 and the next least expensive ASOTV Product offered for sale on the Amazon Website (notably a product "Ships from and sold by Amazon.com").   Attached as **Exhibit DD** is a screenshot of the listing for the relevant Counterfeit Product.

---

[20]*Id.*

77.     Also, on September 20, 2016, Ideavillage identified a 3P Seller offering for sale a Counterfeit Product (a counterfeit Copper Fit Pro Series product) on the Amazon Website, with a price of close to five dollars ($5.00) less than Ideavillage's suggested retail price of $19.99, purchased the Counterfeit Product on the same date, which was delivered on October 6, 2016 with a return address in Shanghai, China.  Attached as **Exhibit EE** are copies of the purchase invoice and photographs of the relevant Counterfeit Product.

78.     On numerous occasions, Plaintiffs have notified Amazon, through its Vendor Managers of  FBA Sellers and/or other 3P Sellers drop-shipping Counterfeit Products from China, Japan, Thailand and/or other countries prohibited from distributing ASOTV Products directly to U.S. customers, and Amazon, through its Vendor Managers, has indicated that certain solutions are available to stop, or at the very least diminish, the drop-shipment of such Counterfeit Products in the U.S.;  however, as of the date of this Complaint, no such solutions have been instituted.   Attached as **Exhibit FF** is a representative sample of the e-mail correspondence between Plaintiffs and Amazon Vendor Managers informing Amazon of ASOTV Products being drop-shipped from countries prohibited from distributing ASOTV Products directly to U.S. customers and Amazon proposing certain solutions, which have not been implemented to date. *See also* **Exhibit AA**.

79.     It is common for Counterfeit Products to be listed on the Amazon Website for much less than the suggested retail price for Plaintiffs' ASOTV Products, resulting in significant damage to Plaintiffs through product cost erosion on Amazon and other wholesale and retail marketplaces and outlets, including on Plaintiffs Websites, which is partially caused by Amazon's allowance of multiple sellers to sell their products under the same PDP, regardless of whether such products are Counterfeit Products, and even with knowledge of both specific

listings as well as the types of listings that are for Counterfeit Products, and as a result of Amazon's pricing algorithms created and used by Amazon on the Amazon Website, which factor in the low list prices of Counterfeit Products.  Attached as **Exhibit GG** is correspondence between Plaintiffs and Amazon, through its Vendor Managers, notifying Amazon of such product cost erosion on Amazon and other ASOTV Channels.  *See* **Exhibits AA** and **FF**.

80.     Consumers who have purchased Counterfeit Products from PDP Hijackers have left bad reviews or comments on the Hijacked PDP, thereby driving down sales of Plaintiffs' ASOTV Product properly associated with the PDP, as well as affecting the performance standards for all sellers, including 1P Sellers, listing Plaintiffs' ASOTV Product under the Hijacked PDP.  Attached as **Exhibit HH** hereto is a representative sample of such bad reviews or comments left by purchasers of Counterfeit Products from Hijacked PDPs.

81.     Amazon has received notice from Plaintiffs of the bad reviews or comments made by purchasers of Counterfeit Products from Hijacked PDPs, which has resulted in diminished sales of Plaintiffs' ASOTV Products, yet has taken no action to curtail the sale of such Counterfeit Products and resulting price erosion, despite having the knowledge, opportunity and means to do so.  Attached as **Exhibit II** hereto are a representative sample of communications between Plaintiffs and Amazon, through its Vendor Managers, concerning the bad reviews or comments left by purchasers of Counterfeit Products from Hijacked PDPs.

82.     Such bad reviews or comments themselves, also serve as notice to Amazon that Counterfeit Products are being sold through the Hijacked PDPs, either by confirming that the Counterfeit Product was drop-shipped from a country that is not authorized to distribute directly to customers in the U.S., such as China, or that the Counterfeit Product is otherwise unquestionably counterfeit but, similarly, Amazon has taken no action to prevent the sale of such

Counterfeit Products despite having the knowledge, opportunity and means to do so. (*see* **Exhibit HH**).[21]

83.     Although Amazon's sophisticated FBA inventory and tracking systems, described *supra*, incontrovertibly allows it to identify the specific FBA Seller(s) that shipped the Counterfeit Products contained in any Seizure Notice identifying Amazon (or an Amazon Fulfilment Center) as importer of record, whether correctly or incorrectly, and accordingly there is no question that Amazon received notice of any Infringing Products identified in a Seizure Notice, upon information and belief, Amazon has taken no action with respect to those FBA Sellers, such as terminating their relationship with Amazon, among other available and appropriate actions.

84.     In addition to Amazon's own infringing and/or counterfeiting activities alleged herein including, without limitation, the importation of Counterfeit Products; the comingling of 1P Products and/or FBA Products with Counterfeit Products; and upon information and belief, its advertising, marketing, promotion, distribution, display, offering for sale, and/or sale of Counterfeit Products; among other activities alleged herein, Amazon also has knowledge of FBA Sellers' and 3P Sellers' infringing and/or counterfeiting activities occurring on the Amazon Website and using FBA through: notice from Plaintiffs and other brand owners regarding specific infringements reported through the Amazon Reporting System and otherwise (e.g. through reports to Amazon Vendor Managers); its thorough handling of every single 3P Product (including Counterfeit Products) during the Receiving Process (*e.g.*, the "six-sided check"); its sophisticated product inventory tracking and management systems; allowing 1P Sellers and 3P Sellers to offer for sale and sell Counterfeit Products obtained/dropped-shipped from countries

---

[21]*See supra*, fn. 2.

known for the wide-spread sale of Counterfeit Products, such as China, Japan and Thailand; among other notice alleged herein.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Direct Trademark Counterfeiting Under Sections 32, 34, and 35 of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d), and 1117(b)-(c)))**

85.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

86.     Plaintiffs are the exclusive owners and/or licensees of all right and title to Plaintiffs' Marks.

87.     Plaintiffs have continuously used Plaintiffs' Marks in interstate commerce since at least as early as the dates of first use reflected in the respective registrations and/or applications, which are identified in the chart attached hereto as **Exhibit A**.

88.     Without Plaintiffs' authorization or consent, with knowledge of Plaintiffs' well-known and prior rights in their Plaintiffs' Marks and with knowledge that Defendant's Counterfeit Products bear counterfeit marks, Defendant intentionally reproduced, copied, and/or colorably imitated Plaintiffs' Marks and/or used spurious designations that are identical with, or substantially indistinguishable, from one or more of Plaintiffs' Marks on or in connection with the import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products, whether imported by Amazon, designated as "Ships from and sold by Amazon.com" and/or Comingled Inventory.

89.     Defendant has imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold its Counterfeit Products to the purchasing public in direct competition with Plaintiffs, in or affecting interstate commerce, and/or have acted with reckless

disregard of Plaintiffs' rights in and to Plaintiffs' Marks, through its participation in such activities.

90.     Defendant has applied its reproductions, counterfeits, copies, and colorable imitations of Plaintiffs' Marks to packaging, point-of-purchase materials, online listings, promotions and/or advertisements intended to be used in commerce upon, or in connection with, the importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling of Defendant's Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendant originate from, are associated with or are otherwise authorized by Plaintiffs, thereby making substantial profits and gains to which it is not entitled in law or equity.

91.     Defendant's unauthorized use of Plaintiffs' Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiffs or their authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in Plaintiffs' Marks.

92.     Defendant's actions constitute willful counterfeiting of Plaintiffs' Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

93.     As a direct and proximate result of Defendant's illegal actions alleged herein, Defendant has caused substantial monetary loss and irreparable injury and damage to Plaintiffs, their business, reputation and valuable rights in and to Plaintiffs' Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiffs have no adequate remedy at law, and unless immediately enjoined, Defendant will

continue to cause such substantial and irreparable injury, loss and damage to Plaintiffs and their valuable Plaintiffs' Marks.

94.     Based on Defendant's actions as alleged herein, Plaintiffs are entitled to injunctive relief, damages for the irreparable harm that Plaintiffs have sustained, and will sustain, as a result of Defendant's unlawful and infringing actions alleged herein, and all gains, profits and advantages obtained by Defendant as a result thereof, enhanced discretionary damages, treble damages, and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed and reasonable attorney's fees and costs.

**SECOND CAUSE OF ACTION**
**(Direct Infringement of Registered Trademarks)**
**[115 U.S.C. § 1114/Lanham Act § 32(a)]**

95.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

96.     Plaintiffs have continuously used Plaintiffs' Marks in interstate commerce since at least as early as the dates of first use reflected in the respective registrations and/or applications, which are identified in the chart attached hereto as **Exhibit A**.

97.     Plaintiffs, as the owners and/or exclusive licensees of all right, title and interest in and to Plaintiffs' Marks, have standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

98.     Defendant was, at the time it engaged in its infringing actions alleged herein, actually aware that Plaintiffs are the owners and/or exclusive licensees of the federal trademark registrations and/or applications for Plaintiffs' Marks.

99.     Defendant did not seek, and failed to obtain consent or authorization from Plaintiffs, as the registered trademark owners and/or exclusive licensees of Plaintiffs' Marks, to

deal in and commercially import, export, advertise, market, promote, distribute, display, retail, offer for sale, and/or sell Infringing Products.

100.    Defendant knowingly and intentionally imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Infringing Products, whether imported by Amazon, designated as "Ships from and sold by Amazon.com" and/or Comingled Inventory, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of Plaintiffs' Marks and/or which are identical or confusingly similar to Plaintiffs' Marks.

101.    Defendant knowingly and intentionally reproduced, copied, and colorably imitated Plaintiffs' Marks and applied such reproductions, copies, or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with, the importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or sale of Defendant's Infringing Products.

102.    Defendant was, at the time it engaged in its illegal and infringing actions alleged herein, actually aware that Plaintiffs are the owners and/or exclusive licensees of all rights in and to Plaintiffs' Marks.

103.    Defendant's egregious and intentional use of Plaintiffs' Marks in commerce on or in connection with Defendant's Infringing Products has caused, and is likely to continue to cause actual confusion, to cause mistake and to deceive the general purchasing public as to the source or origin of the Infringing Products, and is likely to deceive the public into believing that Defendant's Infringing Products are Plaintiffs' ASOTV Products or are otherwise associated with, or authorized by, Plaintiffs.

104.    Defendant's infringing actions have been deliberate and committed with knowledge of Plaintiffs' rights and goodwill in Plaintiffs' Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

105.    Defendant's continued, knowing and intentional use of Plaintiffs' Marks without Plaintiffs' consent or authorization, constitutes intentional infringement of the federally registered Plaintiffs' Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

106.    As a direct and proximate result of Defendant's illegal and infringing actions alleged herein, Plaintiffs have suffered substantial monetary loss and irreparable injury, loss and damage to their businesses and valuable rights in and to Plaintiffs' Marks, and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which they have no adequate remedy at law, and unless immediately enjoined, Defendant will continue to cause such substantial and irreparable injury, loss and damage to Plaintiffs and their valuable Plaintiffs' Marks.

107.    Based on Defendant's infringing actions alleged herein, Plaintiffs are entitled to injunctive relief, damages for the irreparable harm that Plaintiffs have sustained, and will sustain, as a result of Defendant's unlawful and infringing actions alleged herein, and all gains, profits and advantages obtained by Defendant as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorney's fees and costs.

### THIRD CAUSE OF ACTION
### (Contributory Trademark Infringement and Counterfeiting Under the Lanham Act)

108.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

109.    Plaintiffs' Marks are valid, federally registered trademarks entitled to protection under the Lanham Act.

110.    Without Plaintiffs' permission, authorization or consent, FBA Sellers and other 3P Sellers have knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of Plaintiffs' Marks and/or which are identical or confusingly similar to Plaintiffs' Marks through Amazon Website and/or using FBA services.  As a result, such FBA Sellers and other 3P Sellers are liable for direct trademark infringement of Plaintiffs' Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114 and willful counterfeiting of Plaintiffs' Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

111.    With full knowledge (constructive through Plaintiffs' federal registrations and/or applications or actual through the VCAs with Plaintiffs and/or through Plaintiffs' complaints submitted through the Amazon Reporting System) of Plaintiffs' rights in Plaintiffs' Marks and the goodwill associated therewith, Defendant has encouraged, enabled, facilitated, participated in and/or materially contributed to the FBA Sellers' and other 3P Sellers' illegal, infringing and/or counterfeiting activities by providing its Amazon Website and its FBA services, which include, without limitation: import/export services, shipping, labeling, quality control, inventory control, pricing control, warehousing, marketing, advertising, payment processing, distribution and other fulfillment services, and has generated significant income directly from FBA Sellers' and other 3P Sellers' illegal, infringing and counterfeiting activities which include, without limitation, the manufacture, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

112.    Defendant had, and currently has, actual knowledge of the FBA Sellers' and other 3P Sellers' illegal infringing and counterfeiting activities through, among other notice: Plaintiffs' numerous complaints submitted through the Amazon Reporting System, Plaintiffs' communications with their respective Amazon Vendor Managers, the wide-spread press coverage of the rampant counterfeiting and infringing activities occurring on the Amazon Website and actions taken by multiple brands to curtail the infringement and counterfeiting occurring on the Amazon Website, which collectively put Defendant on notice of particular Counterfeit Products and/or listings therefor and of Counterfeit Products and/or listings that will infringe in the future, and/or Defendant was, and is, in the unique position of having sufficient information to identify Counterfeit Products as well as the FBA Sellers, and many of the other 3P Sellers responsible therefor, with specificity, and to control and monitor FBA Sellers' and other 3P Sellers' listings, based on Defendant's state of the art sourcing, product identification and tracking abilities and FBA services.

113.    Despite overwhelming notice and knowledge of FBA Sellers' and other 3P Sellers' illegal, infringing and counterfeiting activities, of particular Counterfeit Products and/or listings therefor and of Counterfeit Products and/or listings that will infringe in the future, as well as of its own encouragement, enabling, facilitation, participation in and/or material contribution to the same, Defendant has deliberately or recklessly disregarded such notifications and/or such illegal, infringing and counterfeiting activities, and/or has otherwise been willfully blind to and/or consciously avoided learning about, the full extent of the such illegal, infringing and counterfeiting activities occurring on the Amazon Website and/or using FBA services, and/or declined to exercise its right and ability to stop the same.

114.    By providing its Amazon Website, FBA services and other critical and essential facilitation and fulfillment services to FBA Sellers and other 3P Sellers, Defendant supplied and controlled the instrumentality for FBA Sellers' and other 3P Sellers' infringing and counterfeiting activities, including the manufacture, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products, and Defendant received a direct financial benefit for providing such services.

115.    Defendant's egregious, knowing and intentional contribution to FBA Sellers' and other 3P Sellers' illegal, infringing and counterfeiting activities alleged herein has caused, and is likely to continue to cause actual confusion, to cause mistake and to deceive the general purchasing public as to the source, origin or sponsorship of the Counterfeit Products, and is likely to deceive the public into believing that the Counterfeit Products sold by FBA Sellers and other 3P Sellers on the Amazon Website and/or using FBA services and/or Defendant's other facilitation and fulfillment services are Plaintiffs' ASOTV Products or are otherwise associated with, or authorized by, Plaintiffs, all to the damage and detriment of Plaintiffs' reputations, goodwill and sales.

116.    Defendant is therefore contributorily liable for the infringement and counterfeiting of Plaintiffs' Marks by FBA Sellers and other 3P Sellers on the Amazon Website, which have used, and are continuing to use, FBA services and/or Defendant's other facilitation and fulfillment services in connection with their manufacture, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

117.    Defendant's continuing egregious, knowing and intentional contribution to FBA Sellers' and other 3P Sellers' illegal, infringing and counterfeiting activities alleged herein constitutes intentional infringement of the federally registered Plaintiffs' Marks in violation of

33

§32 of the Lanham Act, 15 U.S.C. § 1114 and willful counterfeiting of Plaintiffs' Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

118.    As a direct and proximate result of Defendant's egregious, knowing and intentional counterfeiting, infringing and contributory actions alleged herein, Plaintiffs have suffered substantial monetary loss and irreparable injury, loss and damage to their businesses and valuable rights in and to Plaintiffs' Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which they have no adequate remedy at law, and unless immediately enjoined, Defendant will continue to cause such substantial and irreparable injury, loss and damage to Plaintiffs and their valuable Plaintiffs' Marks.

119.    Based on Defendant's counterfeiting, infringing and contributory actions alleged herein, Plaintiffs are entitled to injunctive relief, damages for the irreparable harm that Plaintiffs have sustained, and will sustain, as a result of Defendant's counterfeiting, infringing and contributory actions alleged herein, and all gains, profits and advantages obtained by Defendant as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorney's fees and costs.

**FOURTH CAUSE OF ACTION**
**(False Designation of Origin, Passing Off & Unfair Competition)**
**[15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**

120.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

121.    Plaintiffs, as the exclusive owners and/or licensees of all right, title and interest in and to Plaintiffs' Marks, have standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

122.    Plaintiffs' Marks are inherently distinctive and/or have acquired distinctiveness.

123.    Defendant knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly or substantially similar to, and constitute reproductions of Plaintiffs' Marks and Plaintiffs' Works, and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or sale of Infringing Products, with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendant's substandard Infringing Products are Plaintiffs' ASOTV Products or related products, and/or that Defendant's Infringing Products are authorized, sponsored, approved, endorsed or licensed by Plaintiffs, and/or that Defendant is affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Infringing Products, and allowing Defendant to capitalize on the goodwill associated with, and the consumer recognition of, Plaintiffs' Marks and Plaintiffs' Works, to Defendant's substantial profit in blatant disregard of Plaintiffs' rights.

124.    By importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products, that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiffs' ASOTV Products using marks and/or artwork that is identical and/or confusingly or substantially similar to, or which constitute colorable imitations of, Plaintiffs' Marks and Plaintiffs' Works, Defendant has traded off the extensive goodwill of Plaintiffs and their ASOTV Products, and did in fact induce, and intends, and will continue to induce, customers to purchase Infringing Products, thereby directly and unfairly competing with Plaintiffs.  Such conduct has permitted and will continue to permit Defendant to make substantial sales and profits based on the

goodwill and reputation of Plaintiffs and Plaintiffs' Marks, which Plaintiffs have amassed through their nationwide marketing, advertising, sales and consumer recognition.

125.    Defendant knew, or by the exercise of reasonable care, should have known, that its adoption and commencement of, and continuing use in commerce, and/or that the FBA Sellers' and other 3P Sellers' adoption and commencement of, and continuing use in commerce of marks and artwork that are identical or confusingly or substantially similar to and constitute reproductions of Plaintiffs' Marks and Plaintiffs' Works would cause confusion, mistake, or deception among purchasers, users and the public.

126.    Upon information and belief, Defendant's aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public, and with the intent to trade on the goodwill and reputation of Plaintiffs, their ASOTV Products and Plaintiffs' Marks and Plaintiffs' Works.

127.    As a direct and proximate result of Defendant's aforementioned actions, Defendant has caused irreparable injury to Plaintiffs by depriving Plaintiffs of sales of their ASOTV Products and by depriving Plaintiffs of the value of Plaintiffs' Marks and Plaintiffs' Works as commercial assets in an amount as yet unknown, but to be determined at trial, for which they have no adequate remedy at law, and unless immediately restrained, Defendant will continue to cause substantial and irreparable injury to Plaintiffs and the goodwill and reputation associated with the value of Plaintiffs' Marks and Plaintiffs' Works.

128.    Based on Defendant's wrongful conduct, Plaintiffs are entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiffs have sustained and will sustain as a result of Defendant's actions alleged

herein, and all gains, profits and advantages obtained by Defendant as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
### (Direct Federal Copyright Infringement)
### [17 U.S.C. § 501(a)]

129.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

130.    Plaintiffs are the exclusive owners and/or licensees of Plaintiffs' Works.

131.    Defendant had actual notice of Plaintiffs' exclusive rights in and to the Plaintiffs' Works.

132.    Defendant did not attempt and failed to obtain Plaintiffs' consent or authorization to use, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform, and/or market Plaintiffs' Works on or in connection with Infringing Products.

133.    Without permission, Defendant knowingly and intentionally reproduced, copied and displayed Plaintiffs' Works by importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Infringing Products, which bear Plaintiffs' Works, or artwork that is, at a minimum, substantially similar to Plaintiffs' Works.

134.    Defendant's unlawful and willful actions alleged herein, constitute infringement of Plaintiffs' Works, including, without limitation, Plaintiffs' exclusive rights to reproduce, distribute and/or sell the same in violation of 17 U.S.C. § 501(a).

135.    As a direct and proximate result of Defendant's knowing and intentional copyright infringement alleged herein, Plaintiffs have suffered substantial, immediate and irreparable harm in an amount as yet unknown, but to be determined at trial, for which they have no adequate remedy at law, and unless enjoined, Defendant will continue to cause such substantial, immediate and irreparable harm, loss and damage to Plaintiffs.

136.    Based on Defendant's unlawful and infringing actions alleged herein, Plaintiffs are entitled to injunctive relief 17 U.S.C. § 502, Plaintiffs' actual damages and Defendant's profits in an amount to be proven at trial infringement pursuant to 17 U.S.C. § 504(b) or at Plaintiffs' election, statutory damages pursuant to 17 U.S.C. § 504(c) and enhanced discretionary damages for willful copyright infringement, and reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505.

## SIXTH CAUSE OF ACTION
### (Contributory Copyright Infringement)

137.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

138.    Without Plaintiffs' permission, authorization or consent, FBA Sellers and other 3P Sellers have knowingly and intentionally reproduced, copied and displayed Plaintiffs' Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Infringing Products, which bear Plaintiffs' Works, or artwork that is, at a minimum, substantially similar to Plaintiffs' Works, on the Amazon Website and/or using FBA services.  As a result, such FBA Sellers and other 3P Sellers are liable for direct copyright infringement of Plaintiffs' Works under 17 U.S.C. § 501(a).

139.    With full knowledge (constructive through Plaintiffs' federal registrations and/or applications or actual through the VCAs with Plaintiffs and/or through Plaintiffs' complaints submitted through the Amazon Reporting System), of Plaintiffs' rights in Plaintiffs' Works, Defendant has induced, encouraged, enabled, facilitated, participated in and/or materially contributed to the FBA Sellers' and other 3P Sellers' unlawful and infringing activities by providing its Amazon Website and its FBA services, which include, without limitation: import/export services, shipping, labeling, quality control, inventory control, pricing control,

warehousing, marketing, advertising, payment processing, distribution and other fulfillment services, and has generated significant income directly from FBA Sellers' and other 3P Sellers' unlawful and infringing activities.

140.    Defendant had, and currently has, actual and constructive knowledge of the FBA Sellers' and other 3P Sellers' unlawful and infringing activities through, among other notice: Plaintiffs' numerous complaints submitted through the Amazon Reporting System, Plaintiffs' communications with their respective Amazon Vendor Managers, the wide-spread press coverage of the rampant infringing activities occurring on the Amazon Website and actions taken by multiple brands to curtail the infringement occurring on the Amazon Website, which collectively put Defendant on notice of particular Infringing Products and/or listings therefor, and of Infringing Products and/or listings that will infringe in the future, and/or Defendant was, and is, in the unique position of having sufficient information to identify Infringing Products and the FBA Sellers, and many of the other 3P Sellers responsible therefor, with specificity, and to control and monitor FBA Sellers' and other 3P Sellers' listings, based on Defendant's state of the art sourcing, product identification and tracking abilities and FBA services.

141.    Despite overwhelming notice and knowledge of FBA Sellers' and other 3P Sellers' illegal, infringing activities, as well as of its own inducement, encouragement, enabling, facilitation, participation in and/or material contribution to the same, Defendant has deliberately or recklessly disregarded such notifications and/or such illegal, infringing and counterfeiting activities, and/or has otherwise been willfully blind to and/or consciously avoided learning about, the full extent of the such illegal, infringing and counterfeiting activities occurring on the Amazon Website and/or using FBA services, and/or declined to exercise its right and ability to stop the same.

142.    By providing and encouraging and incentivizing the use of its Amazon Website, FBA services and other critical facilitation and fulfillment services to FBA Sellers and other 3P Sellers and by encouraging competition for winning the Buy Box, thereby, inadvertently influencing all sellers to lower prices, Defendant induced, encouraged, enabled, facilitated, participated in and/or materially contributed to FBA Sellers' and other 3P Sellers' unlawful and infringing activities, including the manufacture, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Infringing Products, and Defendant received a direct financial benefit for providing such services.

143.    As a result of the foregoing, Defendant is contributorily liable for the infringement of Plaintiffs' Works by FBA Sellers and other 3P Sellers on the Amazon Website that use FBA services and/or Defendant's other facilitation and fulfillment services in connection with their manufacture, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Infringing Products.

144.    As a direct and proximate result of Defendant's willful, knowing and intentional contributory copyright infringement alleged herein, Plaintiffs have suffered substantial, immediate and irreparable harm in an amount as yet unknown, but to be determined at trial, for which they have no adequate remedy at law, and unless enjoined, Defendant will continue to cause such substantial, immediate and irreparable harm, loss and damage to Plaintiffs.

145.    Based on Defendant's unlawful and infringing actions alleged herein, Plaintiffs are entitled to injunctive relief 17 U.S.C. § 502, Plaintiffs' actual damages and Defendant's profits in an amount to be proven at trial infringement pursuant to 17 U.S.C. § 504(b) or at Plaintiffs' election, statutory damages pursuant to 17 U.S.C. § 504(c) and enhanced discretionary

damages for willful copyright infringement, and reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505.

**SEVENTH CAUSE OF ACTION**
**(Vicarious Copyright Infringement)**

146.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

147.    Without Plaintiffs' permission, authorization or consent, FBA Sellers and other 3P Sellers have knowingly and intentionally reproduced, copied and displayed Plaintiffs' Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Infringing Products, which bear Plaintiffs' Works, or artwork that is, at a minimum, substantially similar to Plaintiffs' Works, on the Amazon Website and/or using FBA services.  As a result, such FBA Sellers and other 3P Sellers are liable for direct copyright infringement of Plaintiffs' Works under 17 U.S.C. § 501(a)

148.    Through its VCAs, agreements with 3P Sellers and otherwise as a result of carrying out its FBA Services and/or Defendant's other facilitation and fulfillment services, Defendant had the legal right and ability to control and supervise FBA Sellers' and other 3P Sellers' unlawful and infringing activities occurring on the Amazon Website and/or using FBA services and Defendant was, and is, in the unique position of having sufficient information to identify Infringing Products and the FBA Sellers, and many of the other 3P Sellers responsible therefor, with specificity, and to control and monitor FBA Sellers' and other 3P Sellers' listings, based on Defendant's state of the art sourcing, product identification and tracking abilities and FBA services.

149.    Despite having such a right and ability to control and supervise the FBA Sellers' and other 3P Sellers' direct infringement of Plaintiffs' Works occurring on the Amazon Website

41

and/or using FBA services, Defendant either refused and/or failed to exercise its right and ability to stop or limit the FBA Sellers' and other 3P Sellers' unlawful infringing activities, and as a direct and proximate result of Defendant's failure to do the same, the FBA Sellers' and other 3P Sellers' are continuing to infringe Plaintiffs' Works.

150.    Defendant has derived, and continues to derive, direct and substantial financial benefits directly from FBA Sellers' and other 3P Sellers' unlawful and infringing activities.

151.    As a result of the foregoing, Defendant is vicariously liable for the infringement of Plaintiffs' Works by FBA Sellers and other 3P Sellers on the Amazon Website that use FBA services and/or Defendant's other facilitation and fulfillment services in connection with their manufacture, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Infringing Products.

152.    As a direct and proximate result of Defendant's willful, knowing and intentional vicarious copyright infringement alleged herein, Plaintiffs have suffered substantial, immediate and irreparable harm in an amount as yet unknown, but to be determined at trial, for which they have no adequate remedy at law, and unless enjoined, Defendant will continue to cause such substantial, immediate and irreparable harm, loss and damage to Plaintiffs.

153.    Based on Defendant's unlawful and infringing actions alleged herein, Plaintiffs are entitled to injunctive relief 17 U.S.C. § 502, Plaintiffs' actual damages and Defendant's profits in an amount to be proven at trial infringement pursuant to 17 U.S.C. § 504(b) or at Plaintiffs' election, statutory damages pursuant to 17 U.S.C. § 504(c) and enhanced discretionary damages for willful copyright infringement, and reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505.

## EIGHTH CAUSE OF ACTION
### (Violation of Deceptive Acts and Practices)
### [N.Y. Gen. Bus. Law § 349]

154.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

155.    Through Defendant's unlawful, unauthorized, and unlicensed use of Plaintiffs' Marks and/or Plaintiffs' Works on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in Infringing Products, which are identical and/or confusingly or substantially similar to Plaintiffs' ASOTV Products, Defendant has engaged in consumer-oriented conduct that has adversely affected the public interest and has resulted in injury to consumers in New York.

156.    Defendant's aforementioned conduct was, and is, a willful and deliberate attempt to mislead consumers, and constitutes the use of deceptive acts or practices in the conduct of business, trade or commerce.   Such conduct has deceived and materially misled, or has a tendency to deceive and materially mislead the consuming public, and has injured, and will continue to injure, Plaintiffs' business, reputation and goodwill in violation of N.Y. Gen, Bus. Law §§ 349.

157.    As a result of Defendant's actions alleged herein, Plaintiffs have suffered, and will continue to suffer, irreparable harm for which they have no adequate remedy at law.

158.    Pursuant to N.Y. Gen. Bus. Law. § 349(h), Plaintiffs are entitled to enjoin Defendant's unlawful conduct as well as obtain damages in an amount to be determined at trial, costs, disbursements and attorney's fees.

## NINTH CAUSE OF ACTION
### (False Advertising)
### [N.Y. Gen. Bus. Law § 350]

159.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

160.    Without the authorization of Plaintiffs, Defendant has used Plaintiffs' Marks and/or Plaintiffs' Works and/or marks, and/or artwork and/or packaging designs that are identical and/or confusingly or substantially similar to Plaintiffs' Marks and/or Plaintiffs' Works in connection with the advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products, which are identical and/or confusingly or substantially similar to Plaintiffs' ASOTV Products, causing confusion, mistake and deceiving consumers and the public as to the source, origin, sponsorship, or quality of the Infringing Products.

161.    Defendant's aforementioned willful and intentional conduct constitutes false advertising in the conduct of any business, trade or commerce and has injured, and will continue to injure, Plaintiffs' businesses, reputations and goodwill in violation of N.Y. Gen, Bus. Law § 350.

162.    As a result of Defendant's actions alleged herein, Plaintiffs have suffered, and will continue to suffer, irreparable harm for which they have no adequate remedy at law.

163.    Pursuant to N.Y. Gen. Bus. Law. § 350(e), Plaintiffs are entitled to enjoin Defendant's unlawful conduct as well as obtain damages in an amount to be determined at trial, costs, disbursements and attorney's fees.

**TENTH CAUSE OF ACTION**
**(Unfair Competition)**
**[New York Common Law]**

164.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

165.     By importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products, Defendant has traded off the extensive goodwill of Plaintiffs and their ASOTV Products to induce and did induce, and intends and will continue to induce customers to purchase the Infringing Products, thereby directly competing with Plaintiffs.  Such conduct has permitted, and will continue to permit, Defendant to make substantial sales and profits based on the goodwill and reputations of Plaintiffs, which they have amassed through nationwide marketing, advertising, sales and consumer recognition.

166.     Defendant's advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products was and is in violation and derogation of Plaintiffs' rights and is likely to cause confusion, cause mistake and to deceive consumers and the public as to the source, origin, sponsorship, or quality of the Infringing Products.

167.     Defendant knew, or by the exercise of reasonable care should have known, that its advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products and its continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products would cause confusion, cause mistake or deceive purchasers, users and the public.

168.    Upon information and belief, Defendant's aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive, in blatant disregard of Plaintiffs' rights, and for the wrongful purpose of injuring Plaintiffs and their competitive positions while benefiting Defendant.

169.    As a direct and proximate result of Defendant's aforementioned wrongful actions, Plaintiff has been, and will continue to be, deprived of substantial sales of Plaintiffs' ASOTV Products in an amount as yet unknown but to be determined at trial, for which Plaintiffs have no adequate remedy at law, and Plaintiffs have been, and will continue to be, deprived of the value of Plaintiffs' Marks and Plaintiffs' Works as commercial assets, in an amount as yet unknown but to be determined at trial, for which Plaintiffs have no adequate remedy at law.

170.    As a result of Defendant's actions alleged herein, Plaintiffs are entitled to injunctive relief, an order granting Plaintiffs' damages and Defendant's profits stemming from their infringing activities, and exemplary or punitive damages for Defendant's intentional misconduct.

### ELEVENTH CAUSE OF ACTION
### (Unjust Enrichment)
### [New York Common Law]

171.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

172.    By virtue of the egregious and illegal acts of Defendant described herein, Defendant has been unjustly enriched in an amount to be proven at trial.

173.    Defendant's retention of monies gained through its deceptive business practices, infringement, acts of deceit and otherwise would serve to unjustly enrich Defendant and would be contrary to the interests of justice.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendant, inclusive, as follows:

A.      For an award of Defendant's profits and Plaintiffs' damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3), and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally, directly or indirectly using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.      In the alternative to Defendant's profits and Plaintiffs' actual damages, enhanced discretionary damages and treble damages for the willful use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services and/or for the willful encouragement, enabling, facilitation, participation in and/or material contribution to such use, for statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just, which Plaintiffs may elect prior to the rendering of final judgment;

C.      For an award of Defendant's profits and Plaintiffs' damages in an amount to be proven at trial for willful trademark infringement and/or contributory trademark infringement of its federally registered Plaintiffs' Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.      For an award of Defendant's profits and Plaintiffs' damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of

origin and unfair competition under 15 U.S.C. §1125(a);

E.      For an award of Plaintiffs' actual damages and Defendant's profits, pursuant to 17 U.S.C. § 504(b) in an amount to be proven at trial for willful copyright infringement, contributory copyright infringement and vicarious copyright infringement of Plaintiffs' Works under 17 U.S.C. § 501(a);

F.      In the alternative to Plaintiffs' actual damages and Defendant's profits for copyright infringement, contributory copyright infringement and vicarious copyright infringement of Plaintiffs' Works pursuant to 17 U.S.C. § 504(b), for statutory damages of up to $150,000 per infringement pursuant to 17 USC § 504(c) for willful copyright infringement, which Plaintiffs may elect prior to the rendering of final judgment;

G.      For an award of damages in an amount to be proven at trial for deceptive acts and practices unlawful pursuant to N.Y. Gen. Bus. Law. § 349(h);

H.      For an award of damages to be proven at trial for false advertising pursuant to N.Y. Gen. Bus. Law. § 350(e);

I.      For an award of damages to be proven at trial for common law unfair competition;

J.      For an award of damages in an amount to be proven at trial for unjust enrichment;

K.      For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendant, or its agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by Defendant, and all those in active concert or participation with Defendant, and each of them who receives notice directly or otherwise of such injunction from:

    i. manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing

in the Infringing and/or Counterfeit Products;

ii.     directly or indirectly infringing in any manner any of Plaintiffs' trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation Plaintiffs' Marks or Plaintiffs' Works;

iii.     directly or indirectly using any reproduction, counterfeit, copy or colorable imitation of Plaintiffs' trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation Plaintiffs' Marks and Plaintiffs' Works to identify any goods or services not authorized by Plaintiffs;

iv.     directly or indirectly using any of Plaintiffs' trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation Plaintiffs' Marks and Plaintiffs' Works, or any other marks or artwork that are confusingly or substantially similar to Plaintiffs' Marks and Plaintiffs' Works on or in connection with Defendant's manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products.

v.     directly or indirectly using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed,

displayed, offered for sale, or sold by Defendant with Plaintiffs, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, or sold by Defendant and Defendant's commercial activities by Plaintiffs.

vi.   directly or indirectly engaging in the unlawful, unfair, or fraudulent business acts or practices, including, without limitation, the actions described herein, including the advertising and/or dealing in any Infringing Products;

vii.   directly or indirectly engaging in any other actions that constitute unfair competition with Plaintiffs;

viii.   directly or indirectly engaging in any other act in derogation of Plaintiffs' rights;

ix.   effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action;

x.   instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (x) above; and

L.   For an order of the Court requiring that Defendant destroy any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in Defendant's possession, custody or control that infringe any

of Plaintiffs' trademarks, copyrights or other rights including, without limitation Plaintiffs' Marks or Plaintiffs' Works, or bear any marks that are confusingly or substantially similar to Plaintiffs' Marks and Plaintiffs' Works pursuant to 15 U.S.C. § 1118;

       M.    For an order from the Court requiring that Defendant provide complete accountings for any and all monies, profits, gains and advantages derived by Defendant from its manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Infringing and/or Counterfeit Products as described herein, including prejudgment interest.

       N.    For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendant's possession, which rightfully belong to Plaintiffs;

       O.    For an award of exemplary or punitive damages in an amount to be determined by the Court;

       P.    For Plaintiffs' reasonable attorney's fees;

       Q.    For all costs of suit; and

       R.    For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all claims.

Dated: December 5, 2016               Respectfully submitted,

                                 EPSTEIN DRANGEL LLP

               BY:                       
                              Ashly E. Sands (AS 7715)
                              asands@ipcounselors.com

Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Jennette Wiser (JW 0386)
jwiser@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391

*Attorneys for Plaintiffs*